# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia



In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

THE IPHONE 6 CURRENTLY LOCATED AT AN FBI FACILITY AT 801 FOLIN LANE, VIENNA VIRGINIA 22180

Case No. 1:17-SW-167

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
THE IPHONE 6 CURRENTLY LOCATED AT AN FBI FACILITY AT 801 FOLIN LANE, VIENNA VIRGINIA 22180, as described in Attachment A (Description of Property to be Searched).

located in the _____Eastern_____ District of _____Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B (Description of Items to be Seized).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2113(a) and (d) | Bank Robbery |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

AUSA Jack Hanly/SAUSA Michelle Pascucci

Richard R. Stallings, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 31 Mar 17

City and state: Alexandria, Virginia

_____/s/_____
Ivan D. Davis
United States Magistrate Judge

## ATTACHMENT A

The Device is an Apple iPhone 6, IMEI: 355412077466306, and SN: FNMSV6KJG5MR, with assigned telephone number (404) 804-5306. The Device was seized from Albert Taderera on March 24, 2017, and taken into custody by the Federal Bureau of Investigation. It is currently located at 801 Folin Lane, Vienna, Virginia 22180.

## ATTACHMENT B

A.  The following information about the users of the Device:

   1. Names (including subscriber names, user names, and screen names);
   2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
   3. Local and long distance telephone connection records, including for text and other instant messaging;
   4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
   5. Length of service (including start date) and types of service utilized;

B.  All records and other information (not including the contents of communications) relating to the Device, including:

   1. All data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the Device; and

   2. An engineering map or similar information showing all cell site tower locations, sectors, and orientations;

C.  Navigation, locations, and any and all stored locations on the Device's GPS programs.



UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

IN THE MATTER OF THE SEARCH OF: )
)
)
) CASE NO: 1:17-SW-167
THE IPHONE 6 CURRENTLY LOCATED AT )
AN FBI FACILITY AT 801 FOLIN LANE, )
VIENNA, VIRGINIA 22180 )
)

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH AND SEIZURE WARRANT

I, Richard R. Stallings, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI"). I have been an SA with the FBI since March 1998. I am currently assigned to Squad CR-4 of the Northern Virginia Violent Crimes Task Force ("VCTF"). CR-4 is responsible for conducting investigations targeting violent crime offenses such as bank robbery, commercial robbery, and other acts of criminal violence in the Northern Virginia area. Since 1998, I have investigated federal narcotics violations and violent crimes that led to the arrest and conviction of narcotics dealers and robbers.

2. From 1998 until 2002, I was assigned to investigate white-collar crime, health care fraud, and prescription drug diversion. From 2002 to 2009, I was assigned to the Washington D.C. Safe Streets Task Force investigating violent gangs and drug trafficking organizations. From 2009 to 2013, I performed duties investigating narcotics trafficking as part of the Cross Border Task Force. From 2013 to present, I have been assigned to the Northern Virginia VCTF. Since 1998, I have received training and experience in interview

and interrogation techniques, arrest procedures, search and seizure, search warrant applications, narcotics, narcotics investigations, white-collar crimes, white-collar crime investigations, and various other techniques and procedures. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug trafficking groups. In the course of conducting these investigations, I have used the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting short- and long-term undercover operations, including reverse undercover drug operations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; requesting, collecting, and analyzing billing records; conducting court-authorized electronic surveillance; and preparing and executing search warrants.

3. I am aware that Title 18 of the United States Code, Section 2113(a), makes it a crime for anyone by force and violence, or by intimidation, to take, or attempt to take, from the person or presence of another, any property or money or any other thing of value belonging to, or in the care custody, control, management, or possession of, any federally insured bank. I am further aware that 18 U.S.C. § 2113(d) increases the potential penalty for anyone to violate § 2113(d) and, in so doing, to assault any person, or put in jeopardy the life of any person by the use of a dangerous weapon or device.

4. This affidavit is submitted in support of a search and seizure warrant for a cellular telephone. This cellular telephone is described as an iPhone 6, International Mobile Station Equipment Identity ("IMEI") IMEI 355412077466306, and serial number ("SN") FNMSV6KJGRMR, bearing telephone number (404) 804-5306 hereinafter, ("the Device") as more fully described in Attachment A incorporated herein by reference. The purpose of this application is to request authority to search the Device for evidence, fruits, and

instrumentalities of criminal activity. The Device was seized from Albert Taderera ("Taderera") on March 24, 2017, when he was arrested by the U.S. Customs and Border Control at Dulles International Airport. The Device is currently in the possession of the Federal Bureau of Investigation and located at 801 Folin Lane, Vienna, Virginia 22180.

## THE INVESTIGATION

5. Between February 14, 2015, and March 2, 2017, sixteen banks were robbed in the Metro-West and Greater Boston areas in Massachusetts. In most of the robberies, the victim tellers described the robber ("robber") as a thin male approximately 6'0 in height. In all of the robberies, the robber wore a dark hooded sweatshirt, a dark colored hat, a dark mask and/or sunglasses covering his face, black gloves, and dark outer clothing. In each of the robberies, the robber entered the bank and made verbal demands for the bank's money. In many of the robberies, the robber displayed what appeared to be a black semi-automatic handgun.

6. In all of the robberies, the banks' video surveillance cameras captured images consistent with the victim tellers' descriptions.

7. Many of the robberies occurred in suburban settings where the banks were freestanding that featured adjacent wooded areas/foliage. In all of the robberies, witnesses observed the robber leaving the banks following the robbery, and entering into these wooded areas. In many of the robberies witnesses observed the robber run toward, enter into, and then leave the area in a black BMW sedan.

8. In four of the robberies, independent witnesses reported observing a black BMW sedan near the banks prior to the robberies. In many of the robberies, witnesses reported observing a black male appearing to conduct surveillance from wooded areas near the banks prior to the robberies. Additionally, the same witnesses reported viewing a black BMW sedan, prior to each robbery, near the respective banks.

9. Based on the above, the VCTF believes that the same individual driving the same BMW is responsible for the robberies.

## ENCOUNTER WITH TADERERA AND THE BMW

10. Utilizing intelligence garnered from the robber's past bank robberies, the VCTF developed an initiative to identify potential towns, and banks within those towns, believed to be consistent with the robber's modus-operandi ("MO"). On March 9, 2017, members of the VCTF and Concord Police Department in Concord, Massachusetts, conducted surveillance of multiple banks in Concord, Massachusetts. A TD Bank and a Citizens Bank, adjacent to each other on Main Street in West Concord, were identified as banks that are consistent with the robber's MO based on the bank's proximity to wooded areas and access to a highway. The VCTF requested that the Concord Police conduct routine patrols around the aforementioned banks in an effort to identify the robber while he conducted pre-robbery surveillance. Concord Police were provided the robber's description and the make and color of the vehicle he may have utilized, a black BMW sedan.

11. On March 16, 2017, while conducting routine patrol of Citizens and TD Banks on Main Street in West Concord, Concord Police observed a black BMW sedan matching the description of the robber's vehicle. Additionally, Concord Police observed an individual in a black BMW sedan matching the robber's description. As Concord Police entered one of the bank's parking lots, the black BMW sedan exited its parking spot and drove towards an apartment complex nearby the bank. Based on the suspicious activity, and proximity to the banks, Concord Police initiated a vehicle stop and initiated a query of the BMW's license plate. The query indicted that the registration for the BMW was revoked.

12. Concord Police identified the operator of the vehicle as Taderera, DOB 3/17/1981. Taderera's listed residence is in Brighton, Massachusetts. Concord Police questioned Taderera as to why he was parked outside the banks. Taderera informed Concord

Police that he was going to visit an acquaintance in the apartment complex. Taderera provided Officers the name of an individual that had no association with the referenced apartment complex. He was unable to provide Officers with additional information.

13. After Concord Police verified the BMW's license plates were revoked, Officers impounded Taderera's BMW. Per department policy, the BMW was inventoried and towed to an impound lot in Billerica, Massachusetts. The BMW was later transferred to the FBI impound lot in Wilmington, Massachusetts. Taderera was allowed to take a few personal items from the vehicle. Officers observed Taderera take a pair of gloves and sunglasses. Law enforcement noted that Taderera is an African-American male, approximately 6'0 with a thin build.

14. On March 20, 2017, law enforcement officers interviewed Taderera's ex-wife Anjala Manuelpillai ("Manuelpillai"). Manuelpillai reviewed the various banks' video surveillance footage and stills from the various banks depicting the robber. Manuelpillai stated that she believed the individual in the video and in the still pictures was Taderera. Manuelpillai stated that she recognized Taderera from his height, his build, and his gait.

15. In speaking with Manuelpillai, law enforcement asked her what phone she, Manuelpillai, utilized to contact Taderera. Manuelpillai stated that Taderera uses phone number associated with the Device.

16. On Wednesday, March 22, 2017, the FBI received information that the company that had towed the BMW had received a telephone call from an individual identifying himself as Taderera seeking information regarding the return of the BMW. The tow company told this individual in substance that the BMW was in police custody. The tow company recalled that the call was received from the Device phone.

17. On Thursday, March 23, 2017, at approximately 10:15 p.m., law enforcement received notice from an agent with U.S. Customs and Border Protection ("CBP") that

Taderera had booked a flight scheduled to leave on Friday, March 24, 2017, at 11:00 a.m., from Dulles International Airport in Washington D.C. to Addis Ababa, Ethiopia. Law enforcement subsequently learned that Taderera had rebooked this flight and was now planning to take a flight on Friday, March 24, 2017 at 5:40 p.m., from Dulles International Airport to South Africa.

18. On Friday, March 24, 2017, at approximately 10:30 a.m., I learned that Taderera was on a flight that had left Logan Airport en route to Reagan Airport in Washington D.C.

## ARREST OF TADERERA

19. On Friday, March 24, 2017, an arrest warrant was issued in the District of Massachusetts charging Taderera with armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d).[1] Taderera was arrested on this warrant on Friday, March 24, 2017, as he attempted to board an outbound flight at Dulles International Airport in Virginia. The flight's final destination was Johannesburg, South Africa. Taderera is currently in the custody of the US Marshal.

20. At the time of Taderera's arrest he was in possession of the Device.

21. The Device is presently in the custody of the Federal Bureau of Investigation in Vienna, Virginia.

22. Based on my training and experience, I know that there are certain characteristics of individuals who rob banks. Among other things, individuals who rob banks sometimes utilize maps and navigation aids such as GPS or cell phones to determine locations of banks. Additionally, I know that individuals sometimes utilize maps and other navigation aids such as GPS or cell phones to determine roads and highways at or near banks to aid in their flight following a robbery. An individual may use a cellular phone and its features i.e.,

---

[1] Criminal docket No. 17-MJ-2017-MBB (D. Mass.)

email, internet, text message, photos, GPS, etc., to locate banks and communicate with other co-conspirators via telephone or text messaging. It is my belief that a search of Taderera's Device will reveal searches related to the banks in question.

23. Based on my training and experience, I know that cellular phones are capable of being used to send and receive text messages, photographs, short videos, other electronic data and voice communication. I also know that cellular phones contain internal memory which can store records of received, dialed, and missed calls on that particular phone and that cellular phone memory also stores downloaded ring tones, data downloaded from the internet, pictures, text messages, phone books, date books, address books, recent searches, and other data. I also know that many users will program the phone with personal information to identify the owner of that particular phone.

24. Based on my training and experience, I know that a forensic examination may be performed on a cellular phone to retrieve information. I am also aware that cellular phones save and delete information and even if an item is deleted, it is still possible to recover the deleted files from cellular phones. I am further aware that it takes specialized training and experience along with utilizing software and hardware programs to perform a forensic examination and analysis of a cellular phone in order to retrieve this information. I further know that a forensic examiner may be able to recover evidence such as photographs, text messages, videos, phone books, call history and the geographical location of the cell phone during certain phone calls.

25. As further described in Attachment B, this application seeks authority to search the stored electronic data as well as the software and memory of the Device for the following particular types of information:

    i. Stored locations on the dates of robberies

    ii. Google searches related to banks and/or locations near banks

    iii.    Recent destinations

26. As used in this affidavit, the term "software and memory" refers to digital information which can be interpreted by a cellular telephone and any of its related components. Software is stored in electronic, magnetic, optical, or other digital form. It also includes any information stores on a cellular telephone including the numbers to which and from which calls to the cellular telephone have been transmitted or received. The term "information" includes all information stored on the aforementioned cellular telephone and on any of the memory and features of the cellular telephone.

## CONCLUSION

Based on the foregoing, I respectfully submit that there is probable cause to believe that evidence of bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), committed by the robber may be found on the Device described in Attachment A. Accordingly, I request that this Honorable Court issue the requested search warrant.

_____
Richard R. Stallings
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me this 31st day of March, 2017.

_____ /s/_____
Ivan D. Davis
United States Magistrate Judge

## ATTACHMENT A

The Device is an Apple iPhone 6, IMEI: 355412077466306, and SN: FNMSV6KJG5MR, with assigned telephone number (404) 804-5306. The Device was seized from Albert Taderera on March 24, 2017, and taken into custody by the Federal Bureau of Investigation. It is currently located at 801 Folin Lane, Vienna, Virginia 22180.

## ATTACHMENT B

A. The following information about the users of the Device:

1. Names (including subscriber names, user names, and screen names);
2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
3. Local and long distance telephone connection records, including for text and other instant messaging;
4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
5. Length of service (including start date) and types of service utilized;

B. All records and other information (not including the contents of communications) relating to the Device, including:

1. All data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the Device; and
2. An engineering map or similar information showing all cell site tower locations, sectors, and orientations;

C. Navigation, locations, and any and all stored locations on the Device's GPS programs.